O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID LORENZEN, | ) | Case No. CV 13-08427 DDP (PLAx) |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANTS' MOTION |
| | ) | TO DISMISS THE FIRST, SECOND, AND |
| v. | ) | THIRD CLAIMS FOR RELIEF AND |
| | ) | DENYING DEFENDANTS' MOTION TO |
| CONNECTICUT GENERAL LIFE | ) | STRIKE PLAINTIFFS' REQUEST FOR |
| INSURANCE COMPANY; THE | ) | ATTORNEY'S FEES |
| LINCOLN NATIONAL LIFE | ) | |
| INSURANCE COMPANY, | ) | [Dkt. Nos. 16, 17.] |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Presently before the Court are Defendants' Motion to Dismiss Plaintiffs' First, Second, and Third Claims for Relief (Docket No. 16) and Defendants' Motion to Strike Plaintiffs' Request for Attorney's Fees (Docket No. 17.) For the reasons stated in this order, the Motions are DENIED.

**I. Background**

Plaintiffs David Lorenzen ("David") and Jon Lorenzen ("Jon") (collectively, "Plaintiffs") are the sons of Virginia Lorenzen ("Virginia"). On or about April 17, 1990, Defendant Connecticut General Life Insurance Company ("CGL") issued a universal life insurance policy on the life of Virginia with a death benefit of $1

1  million (the "Policy"). (First Amended Complaint ("FAC"), Docket
2  No. 13, ¶¶ 7-8.) The Policy was owned by The Virginia Lorenzen
3  Trust (the "Trust"), with David and Jon as co-beneficiaries of the
4  Trust. (Id. ¶ 7.)

5  The Policy had an annual premium of $29,500, which was paid by
6  the Trust annually through 2004. (Id. ¶ 9.) From 2004 to 2009, the
7  premiums were automatically deducted from the Policy's cash value.
8  (Id. ¶¶ 10-12.) The Policy provided that it would remain in force
9  as long as the cash value was sufficient to cover the monthly
10 deductions. (Id. ¶ 13.) As of April 2009, the Policy's cash value
11 was no longer was sufficient to cover the premiums and the Policy
12 entered a grace period. (Id. ¶ 16.)

13 On or about March 30, 2009, Defendant Lincoln National Life
14 Insurance Company ("Lincoln"), who had become the Policy
15 administrator on behalf of CGL, sent a payment notice to the
16 Trustee for the annual scheduled premium of $29,500 due on April
17 17, 2009. (Id. ¶¶ 14-15.) On or about May 19, 2009, Lincoln sent a
18 Notice of Policy Status to the Trustee. (Id. ¶ 17.) This notice
19 stated that the Policy would terminate on June 17, 2009 if a
20 premium payment of $99,354 were not received within the grace
21 period. (Id.) Plaintiffs allege that this notice was improper (a)
22 because it failed to provide Plaintiffs with 31 days' notice of
23 lapse as required by the Policy, (b) because the quoted amount was
24 far in excess of the amount actually required to keep the Policy
25 current, and (c) because the notice purported to require that
26 payment be *received* within the grace period, while the Policy only
27 required that payment be *made* within the grace period. (Id. ¶ 18.)
28

2

As a result, Plaintiffs allege that the notice was "invalid and was not binding upon the insured or upon the policy owner." (Id. ¶ 19.)

On or about June 4, 2009, the Trustee asked Lincoln for an illustration of the premium amount required to keep the policy in force for another three years. (Id. ¶ 22.) Lincoln provided an illustration showing that the amount would be $109,579. (Id.) Plaintiffs also allege that the grace period was orally extended on June 16, 2009 until June 30, 2009, a fact not disputed by Defendants. (Id. ¶ 27.) Plaintiffs posted a check by certified mail on June 30, 2009 for the full amount of $109,579. (Id. ¶ 30.) Despite the extension of the grace period, Plaintiffs allege that they received a Notice of Policy Lapse dated June 17, 2009, which is "invalid and void because at the time it was sent, the Policy had not lapsed and was still in force due to the extension, and because Lincoln's original grace period notice was itself invalid and also untimely." (Id. ¶¶ 28-29.)

On July 6, 2009, Lincoln deposited the $109,579 check. (Id. ¶ 32.) This amount was sufficient to keep the Policy in force until at least April 17, 2010. (Id. ¶ 36.) Plaintiffs allege that Lincoln did not notify the Trustee "of any supposed deficiency in connection with the payment." (Id. ¶ 33.)

On or about August 17, 2009, Plaintiffs alleges that "in an abundance of caution" and "incorrectly believing that he was additionally required to request reinstatement," the Trustee signed and submitted a Reinstatement Application to Lincoln. (Id. ¶ 34.) Lincoln advised Plaintiffs in a letter dated August 26, 2009 that the Reinstatement Application would not be approved. (RJN, Docket No. 16-1, Exh. 8.)

3

On September 25, 2009, Lincoln issued a check for $109,579, payable to the Trust, as a purported refund of the premium payment and "an attempt to terminate Defendants' obligations under the Policy." (FAC ¶ 37.) Plaintiffs allege that none of the acts of Lincoln operated to terminate any obligations under the Policy, and therefore the Policy remained in force. (Id. ¶ 38.) Plaintiffs allege that Defendants breached the terms of the Policy on September 25, 2009 by sending the purported refund check and attempting to unilaterally terminate the Policy without legal justification. (Id. ¶ 52.)

On January 17, 2010, Virginia died. (Id. ¶ 40.) On or around March 18, 2013, Jon filed a claim for the death benefits under the Policy, which was denied on the grounds that the Policy had purportedly lapsed on June 22, 2009. (Id. ¶ 42.) On September 18, 2013, the Trust was terminated, with all remaining interests held by the Trust going to David and Jon. (Id. ¶ 43.) Plaintiff David filed this action in state court on September 20, 2013, and Jon joined the action on January 9, 2014.

Defendants now seek dismissal of this action on statute of limitations grounds. Defendants argue that Plaintiffs' claims accrued on June 30, 2009, or, at the latest, on August 25, 2009, and therefore the four year statute of limitations applicable to contract actions had already expired when David filed this action on September 20, 2013. In the event the action is not dismissed in its entirety, Defendants also argue that, at the very least, Jon's claims are time-barred because he did not join this action until January 9, 2014. Defendants also seek to strike Plaintiffs' request for attorney's fees.

4

**II. Defendants' Motion to Dismiss**

   A. <u>Legal Standard</u>

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000). When a 12(b)(6) motion is brought upon statute of limitations grounds, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." <u>Supermail Cargo, Inc. v. United States</u>, 68 F.3d 1204, 1207 (9th Cir. 1995).

   B. <u>Discussion</u>

      1. *Statute of Limitations*

In California, the statute of limitations for contract claims is four years.[1] Cal. Code Civ. Proc. § 337(1). Plaintiff David Lorenzen filed this action in state court on September 20, 2013. Therefore, in order for the action to be timely filed, absent tolling,[2] Plaintiffs' causes of action would have to have accrued on or after September 20, 2009.

---

[1] It is unclear whether Plaintiffs' cause of action for breach of the duty of good faith and fair dealing is intended as a contract claim, a tort claim, or both. The statute of limitations for tort claims is two years. <u>See, e.g.</u>, <u>Love v. Fire Ins. Exchange</u>, 221 Cal. App. 3d 1136, 1144 n.4 (1990).

[2] Plaintiffs do not argue that they are entitled to any tolling.

5

A cause of action for breach of contract generally accrues at the time of the breach. See Niles v. Louis H. Rapaport & Sons, Inc., 53 Cal. App. 2d 644, 651 (1942). When the breach at issue is the improper termination of a life insurance contract, the date on which the cause of action accrues is the date of termination . See Solomon v. North American Life and Cas. Ins. Co., 151 F.3d 1132, 1138 (9th Cir. 1998) (finding that the action "accrued when [the] policy was terminated").

Defendants argue that the Policy indisputably lapsed on June 30, 2009, and that even if the notice regarding termination on this date was not strictly in compliance with the notice requirements under the Policy, this is the date on which the causes of action accrued. Alternatively, Defendants argue that the statute must have begun to run on August 25, 2009 at the latest, the date on which the Trustee received notice that the Reinstatement Application was denied.

However, Plaintiffs could prove a set of facts that show that their claim was timely filed within the four year statute of limitations. There is a question of fact as to whether the Policy was ever terminated or, if it was, when it was terminated, which is when Plaintiffs' action for breach of contract and bad faith accrued. Plaintiffs allege that the original May 19, 2009 notice regarding the grace period and the future lapse date of June 17, 2009, was improper because the insurance contract required 31 days' notice. Regardless of whether such notice was proper or improper, Plaintiffs contend that the parties agreed to extend the grace period until June 30, 2009. Although it is undisputed that CGL sent a letter dated June 17, 2009 purporting to terminate the Policy,

6

that letter may not actually have terminated the Policy in light of the parties' prior agreement to extend the grace period.

Plaintiffs allege that they sent a check for the full amount due on June 30, 2009. Although that check was not received until after the conclusion of the grace period, the facts indicate that CGL may have accepted the payment when it deposited the check, thereby agreeing to continue to provide coverage under the Policy. Further, Plaintiffs allege that the extension of the payment deadline to June 30, 2009 required only that the premium be "paid" by that date, which they urge means that the check must be sent by that date. There are no judicially noticeable materials that necessarily contradict this allegation regarding the exact contours of the oral grace period extension. Therefore, although upon further discovery the facts may show that the Policy lapsed on June 30, 2009 because Plaintiffs' payment was not received by that date and was therefore untimely, Plaintiffs have pled sufficient facts to demonstrate that they may have filed this action within the statute of limitations because the insurance coverage did not necessarily lapse on June 30, 2009.[3]

---

[3] If Plaintiffs' allegations are true, then Defendants may have breached the Policy in multiple ways during the grace period by providing inadequate notice prior to attempting to terminate the Policy and failing to provide monthly premium amounts instead of merely annual amounts in the notices, among other things. To the extent that Plaintiffs seek to recover for these wrongful acts, whether under a breach of contract theory or a bad faith theory, the statute of limitations has run. However, it cannot logically be true that ALL claims for ANY breach, however minor, must be brought within four years of the FIRST such minor breach. If Plaintiffs can show that coverage under the Policy did not terminate until on or after September 25, 2009, Plaintiffs' claims based on the improper termination of the Policy are timely.

7

Defendants argue that the fact that Lincoln filled out a Reinstatement Application indicates that Lincoln knew that the Policy had lapsed, at least as of August 2009 when the application was sent. However, Plaintiffs argue that the application was filled out only "in an abundance of caution." Taking this statement as true, Plaintiffs believed, based on CGL's acceptance of the premium payment, that the Policy had never lapsed. Therefore, the fact that Lincoln was notified that the Reinstatement Application was denied on August 25, 2009 does not necessarily mean that Plaintiffs' action accrued, at the latest, on that date, as a denial of the application does not clearly indicate that CGL terminated the Policy in the first place, merely that the criteria for reinstatement were not met. Further, the check was deposited on July 6, 2009, while the application was not even received until August 17, 2009. Therefore, the premium payment was not necessarily made pursuant to the application; instead, the application may have been an afterthought, pursued in "an abundance of caution" even though Plaintiffs thought that the Policy was still in force due to the accepted payment. The Reinstatement Application was unnecessary if the Policy never lapsed in the first place, which is an issue of fact that cannot be resolved on this Motion.

Further, Plaintiffs' alleged facts could plausibly support a finding that the Policy *never* lapsed, but instead was in force at the time of Virginia's death. Though Defendants sent a return check for $109,579, it is not clear how this payment should be construed. The check was endorsed "NOT IN ACCORDANCE AND SATISFACTION." (FAC ¶ 37.) The proper interpretation of this language, together with additional facts, is ambiguous as to whether it shows that

Defendants were actually terminating the Policy or were returning the funds for some other reason, especially given the long delay in returning the funds. No other notice regarding the purported termination of the Policy was provided along with the check. Therefore, even if Plaintiffs' bad faith claim is construed as a tort claim, Plaintiffs could plausibly show facts indicating that, because the Policy remained in force at the time of Virginia's death, their tort claim based on the failure to pay benefits is timely.

Therefore, construing the facts in the light most favorable to Plaintiffs, it does not appear from the face of the First Amended Complaint and the judicially noticeable materials that there is no set of facts under which Plaintiffs could possibly have timely filed this action.[4] Therefore, the Court DENIES the Motion to the extent that it is based on statute of limitations grounds for Plaintiffs' causes of action for breach of contract and contract-based bad faith,to the extent that those claims accrued on or after September 25, 2009. Plaintiffs' claim for tortious bad faith survives to the extent that Plaintiffs can show that the Policy never terminated, thereby making Defendants' March 2013 denial of

---

[4] Defendants also point out that Plaintiffs do not dispute the fact that, prior to September 18, 2013, Plaintiffs did not have standing to bring this action, which belonged to the Trustee. The Trustee never brought an action for breach of the Policy on behalf of the Trust. However, it is undisputed that David and Jon succeeded to any remaining claims when the Trust was terminated on September 18, 2013 pursuant to California Probate Code § 15408(b). (FAC ¶ 43.) David filed this action on September 20, 2013. Therefore, for purposes of this Motion, it is irrelevant that only the Trustee could have brought this action prior to September 18, 2013. Plaintiffs had proper standing when they commenced this action. Defendants' arguments regarding the issue of whether the claims are barred by the statute of limitations are not affected by whether the Trustee previously held these claims.

death benefits a tortious act. Further, Plaintiffs' claim for declaratory relief survives this Motion to the same extent as the underlying causes of action on which it is based. See Mangini v. Aerojet-General Corp., 230 Cal. App. 3d 1125, 1155 (1991) ("[T]he statute of limitations governing a request for declaratory relief is the one applicable to an ordinary legal or equitable action based on the same claim."). The Court's ruling, however, does not preclude Defendants from arguing, at the summary judgment stage, that Plaintiffs have not shown sufficient facts to support a finding that the statute of limitations did not expire prior to the filing of this action.

### 2. *Amendment to Add Jon's Claims*

Defendants also argue that, even if David's claims are not barred by the statute of limitations, Jon's claims are barred because he did not join this action until January 9, 2014. Defendants argue that even if the statute of limitations began running on September 25, 2009, making David's claim timely, Jon's claim should not be allowed to relate back to the date on which David filed this action. As a result, Defendants seek dismissal of Jon's claims.

Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original pleading when: ... (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading." Fed. R. Civ. Proc. 15. "An amendment adding a party plaintiff relates back to the date of the original pleading only when: (1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; (2)

10

the relation back does not unfairly prejudice the defendant; and (3) there is an identity of interests between the original and newly proposed plaintiff." Rosenbaum v. Syntex Corp., 95 F.3d 922, 935 (9th Cir. 1996) (citing Besig v. Dolphin Boating & Swimming Club, 683 F.2d 1271, 1278-79 (9th Cir. 1982)).

Here, Jon meets the criteria for relation back of an added plaintiff. Jon's claims are identical to David's claims, as Jon and David are co-beneficiaries of the same Policy in equal shares. Therefore, Jon's claims clearly arise out of the same conduct as David's claims. Defendants were on notice of those claims from the original complaint. Jon and David have an identity of interests, as the determination of David's claims will necessarily involve a determination of Jon's identical claims. Finally, Defendants will not experience any undue prejudice as a result of allowing Jon's claims to relate back, as Defendants were on notice of such claims and the claims themselves do not expand the issues presented in this case. Therefore, Jon's claims may relate back to September 20, 2013, when David first filed this action. As a result, Jon's claims are timely to the same extent David's claims are timely. Accordingly, the Court DENIES the Motion with respect to Jon's claims.

**IV. Defendants' Motion to Strike Plaintiffs' Request for Attorney's Fees**

Pursuant to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). Defendants request that the Court strike Plaintiffs' request for attorney's fees because attorney's fees are not recoverable in a

11

contract action and Plaintiffs' tort claim for bad faith is barred by the two-year statute of limitations for tort actions.

At this time, the Court declines to strike Plaintiffs' request for attorney's fees. Because it is not clear that Plaintiffs could prove no set of facts that would entitle them to tort recovery, striking the request could potentially prejudice Plaintiffs. Defendants, however, have alleged no prejudice that may result from allowing the request to remain in the FAC. As a result, the Court leaves the request for attorney's fees in the FAC, with the issue of whether Plaintiffs are actually entitled to recovery of any attorney's fees to be resolved at a later stage.

**V. Conclusion**

For the foregoing reasons, the Court DENIES the motion to dismiss and DENIES the motion to strike.

IT IS SO ORDERED.

Dated: February 24, 2014

DEAN D. PREGERSON
United States District Judge

12